# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| JOHN R. KOLB, JR. | * |
| Plaintiff, | * |
| v. | * Case No.: PWG–12–2782 |
| ACRA CONTROL, LTD., d/b/a ACRA CONTROL, INC., *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

This Memorandum Opinion addresses the Motion to Dismiss, or, in the Alternative, for Summary Judgment, ECF No. 7, that Defendants ACRA Control, Ltd., ACRA Control, Inc. and Curtiss-Wright Controls, Inc. filed; Plaintiff John R. Kolb, Jr.'s Opposition, ECF No. 14; and Defendants' Reply, ECF No. 18. Having reviewed the filings, I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6. For the reasons stated herein, Defendants' Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(3) is DENIED, without prejudice. Defendants' Motion for Summary Judgment as to Defendant Curtiss-Wright Controls, Inc. is GRANTED, and Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the claim against ACRA Control, Inc. is GRANTED. Remaining Defendant ACRA Control, Ltd. is not precluded from re-raising its arguments as to venue in a renewed motion at the conclusion of discovery.

I.  BACKGROUND

Plaintiff brought this case, sounding in breach of contract, against "ACRA Control, Ltd. dba ACRA Control, Inc." and "Curtiss-Wright Controls, Inc."[1] Compl. 1, ECF No. 1. ACRA Control, Inc. ("ACRA U.S.A.") was formed as a Maryland corporation and subsidiary of ACRA Control Ltd. ("ACRA Ireland"), an Irish company. *Id.* ¶ 2. ACRA Ireland and its subsidiary are companies that "suppl[y] airborne data acquisition networks and recording systems and real-time data processing ground stations to the aerospace industry." *Id.*; *see* Fergal Bonner Aff. ¶ 2, Def.'s Mem. Ex. 1, ECF No. 7-3. According to Plaintiff, Defendant Curtiss-Wright Controls, Inc. ("Curtiss-Wright U.S.A."), a Delaware corporation, acquired ACRA Ireland in 2011.[2] Compl. ¶¶ 2–3.

Plaintiff and ACRA Ireland entered into an Employment Agreement and a Performance Incentive Compensation Plan ("PICP") when ACRA Ireland hired Plaintiff to be ACRA U.S.A's president in 1999. *Id.* ¶ 6. The PICP is the contract at issue in this case. It provides, *inter alia*, that, "for a minimum of five (5) years during the period of employment unless mutually agreed in writing," Plaintiff could purchase shares in ACRA Ireland "when the average turnover (ATO) of the company due to US sales, as defined, exceeds one million ($1,000,000) dollars." PICP 1, Compl. Ex. A, ECF No. 1-1 (emphasis removed). Plaintiff alleges that Defendants breached the PICP because, although Plaintiff worked for ACRA Ireland until 2011 and the ATO from U.S.

---

[1] For purposes of considering Defendants' Motion, this Court accepts the facts that Plaintiff alleged in her Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).

[2] According to Defendants, it was Curtiss-Wright Controls (UK) Limited ("Curtiss-Wright UK") that acquired ACRA Ireland, Bonner Aff. ¶ 11, and the two Curtiss-Wright companies are separate entities, Def.'s Mem. 2. Plaintiff does not name Curtiss-Wright UK as a defendant in his Complaint, but in his Opposition, he states that "[i]t is unclear what the exact relationship [is]" between ACRA Ireland and the other three companies: Curtiss-Wright U.S.A., Curtiss-Wright UK, and ACRA U.S.A. Pl.'s Opp'n 2.

sales exceeded one million dollars for fiscal years 2004 – 2010, he was not granted the option to purchase shares for any of those years. Compl. ¶¶ 11 & 13. He maintains that, if he had been granted the options he was promised, he would have acquired a five percent interest in the company, which he claims "was the intent of both parties." *Id.* ¶ 15.

Defendants moved to dismiss Plaintiff's Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or, alternatively, to dismiss or enter summary judgment on the claims against Curtiss-Wright U.S.A. and ACRA U.S.A. Defs.' Mem. 9.

## II. DISCUSSION

### A. Venue

Defendants contend that, in 2003 and again in 2010, Plaintiff and ACRA Ireland executed Option Agreements for Plaintiff to purchase shares of ACRA Ireland. Defs.' Mem. 5–7. They state that the 2010 Option Agreement contained a forum selection clause in which "the parties . . . submit[ted] to the exclusive jurisdiction of the Irish courts." 2010 Agr. § 1.4, Defs.' Mem. Ex. 12, ECF No. 7-14. The 2003 Option Agreement contained the same clause. 2003 Agr. § 1.4, Defs.' Mem. Ex. 8, ECF No. 7-10. Defendants also argue that Plaintiff signed a Notice of Option Exercise ("Notice"), which includes a forum selection clause. Defs.' Mem. 6–7 & Ex. 13, ECF No. 7-15. In the Notice, Plaintiff exercised his right to purchase shares of ACRA Ireland at the time of its acquisition by Curtiss-Wright Controls (UK) Limited ("Curtiss-Wright UK"), Notice ¶¶ 1 & 4;stated that "apart from the Option and the 100 Shares of which I am the legal and beneficial owner, I have no other rights or entitlements in respect of Shares," *id.* ¶ 6; "agree[d] that this Notice of Option Exercise shall be governed by and construed in accordance with Irish law"; and "confirm[ed] [his] irrevocable submission to the exclusive jurisdiction of the

courts of Ireland in respect to any action, suit or proceeding arising out of or in connection with this Notice of Option Exercise," *id.* ¶ 7.

Additionally, Defendants argue that Plaintiff, as a shareholder of ACRA Ireland, was party to the 2011 Share Purchase Agreement ("SPA") between Curtiss-Wright UK and ACRA Ireland's shareholders, and the SPA also contains a forum selection clause. Defs.' Mem. 7–8 & Ex. 14, ECF No. 7-16. The SPA provided that the shareholders, including Plaintiff, "irrevocably waive[d] any claims against [ACRA Ireland] its agents, or employees," SPA 19, § 5.6, and warranted that "there is no agreement, arrangement or obligation in force which calls for the present or future allotment, issue or transfer of, or the grant to any person of the right . . . to call for the allotment, issue or transfer of, any share" of ACRA Ireland, *id.* at 46, Sched. A, § 3.1. Moreover, in the SPA, the parties "irrevocably agree[d] that the courts of Ireland are to have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement and, for such purposes, irrevocably submit[ted] to the exclusive jurisdiction of such courts." *Id.* at 33, § 14.14. Thus, Defendants argue that, after entering into his initial employment agreement and PICP with ACRA Ireland, Plaintiff signed "multiple, subsequent employment agreements" and other documents concerning stock options, in which "he expressly waived and released any claim to an option under the 1999 PICP and warranted that no such claim exists." Defs.' Mem. 5 & 9. In Defendants' view, "these documents, not the PICP, now control Plaintiff's relationship with Defendants." *Id*. at 9.

Plaintiff does not dispute that the later documents had forum selection clauses, but rather counters that "the venue clauses from the completely unrelated . . . []SPA[] and the 2010 Notice of Option Exercise have no bearing on this dispute." Pl.'s Opp'n 2. In Plaintiff's view, "venue is proper in this court because a substantial part of the events or omissions giving rise to the

claim occurred in Maryland" and "at least one defendant is a Maryland corporation, namely ACRA[] Controls, Inc[.]"³ *Id.*

As Defendants note, insofar as their motion to dismiss is based on two forum selection clauses, it is a Rule 12(b)(3) motion to dismiss for improper venue. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *CSS Antenna, Inc. v. Amphenol-Tuchel Electronics, GmbH*, 764 F. Supp. 2d 745, 751 (D. Md. 2011). "Treating a motion to dismiss based on a forum selection clause under 12(b)(3) 'allows the court to freely consider evidence outside the pleadings.'" *CSS Antenna*, 764 F. Supp. 2d at 751 (quoting *Sucampo Pharm.*, 471 F.3d at 549–50). In reviewing a motion to dismiss for improper venue, the Court views the facts and draws all inferences in the light most favorable to the non-moving party. *Rihani v. Team Express Distributing, LLC*, 711 F. Supp. 2d 557, 558 (D. Md. 2010).

Because the validity of the forum selection clauses in the later agreements is undisputed, the issue is whether those clauses govern the forum for resolution of the breach of contract action pending before this Court, when the contract at issue, the PICP, does not have a forum selection clause. *Alliance Solutions, Inc. v. Quest Software, Inc.*, No. ELH-11-2115, 2012 WL 692883 (D. Md. Mar. 1, 2012), is informative. There, the plaintiff erroneously attached a 2006 contract to its complaint for breach of contract, rather than the 2003 contract that it claimed the defendant breached. *Id.* at *1. The defendant moved to dismiss for improper venue, based on the forum selection clause in the 2006 contract. *Id.* The court allowed the plaintiff to amend to refer to and

---

³ Plaintiff also argues that "it would be unreasonable for the Court to enforce the forum clause" because "Plaintiff is unable to ascertain if any fraudulent action has occurred without at least a short period of discovery"; "the severe inconvenience and unfairness of the forum will deprive Plaintiff of his day in court"; and "enforcement of the clause would contravene the public policy of Maryland." Pl.'s Opp'n 11–13. Because the Court denies Defendants' 12(b)(3) motion, it need not address these arguments.

attach the 2003 contract and denied the defendant's motion to dismiss as moot, reasoning that "[b]ecause Alliance no longer seeks to enforce the 2006 Contract, that agreement's forum selection clause is not controlling." *Id.* at *11. The court noted that "[i]t may be that Quest ultimately will prevail in its contention that the 2006 Contract superseded the 2003 Contract. However, in my view, that determination cannot be made without affording the parties an opportunity for discovery." *Id.* at *11 n.20.

A review of *Sucampo Pharmaceuticals*, 471 F.3d 544, also is instructive. There, as in the case before this Court, the plaintiff did not "dispute the validity of the forum-selection agreement," which was contained in an Amended Basic License Agreement. *Id*. at 545 & 550. Instead, it "argue[d] that the instant case [wa]s not governed by the clause because the dispute [arose] under the Safety Agreement," which did not contain a forum-selection clause, and the Safety Agreement was "not incidental to the Amended Basic License Agreement." *Id*. The Fourth Circuit observed that "[t]he Safety Agreement explicitly note[d] that it was executed 'under the Basic Agreement,' with a term concurrent with the Basic Agreement," and that "[t]here is no dispute that the Amended Basic License Agreement is a successor agreement to the Basic Agreement," such that the Safety Agreement "had no independent validity apart from the continued validity of the Basic Agreement" and was "subordinate to the Amended Basic License Agreement." *Id.* at 550. The Fourth Circuit also noted that the Safety Agreement did not have "the attributes of an independent agreement." *Id*. at 551. Therefore, it concluded that the forum selection clause in the Amended Basic License Agreement governed disputes under the Safety Agreement. *Id*.

*CSS Antenna, Inc. v. Amphenol-Tuchel Electronics, GmbH*, 764 F. Supp. 2d 745 (D. Md. 2011), also provides guidance. There, the dispute arose from an agreement between the parties

6

for CSS Antenna, Inc. ("CSS") to purchase electronic components from Amphenol-Tuchel Electronics, GmbH ("ATE"). *Id*. at 747. The plaintiff insisted that the agreement "memorialized their business relationship and represent[ed] the sole contractual agreement between CSS and ATE," but the defendant contended that the forum selection clause in its "General Conditions for the Supply of Products and Services of the Electrical and Electronics Industry" applied to the agreement, such that venue was improper. *Id*. at 751–52. Because the agreement did not include "information regarding price or quantity" and "the parties continued to carry on their business dealings through their purchase order and purchase confirmation arrangement even after signing the . . . Agreement," the court found that the agreement "was intended by the parties to serve as a supplemental agreement between the parties, not to memorialize their entire contractual relationship." *Id.* at 752. However, the court stated that it could not conclude, "[b]ased on the facts currently on the record, . . . that CSS knew or should have known that ATE intended the General Conditions to apply to their contract." *Id*. at 753. Therefore, it denied the defendant's motion to dismiss without prejudice, stating that, "[i]f further evidence is developed during discovery demonstrating the terms of the contracts and whether [Plaintiff] had knowledge of [Defendants'] intent, then the court may reconsider the defendant's motion." *Id.* at 754.

Here, the PICP was not, and could not have been, "executed under" or "subordinate to" the later documents; it predated them. *Cf. Sucampo Pharms.*, 471 F.3d at 550–51. Further, its validity was not contingent on the later documents, as it existed independently for years before those documents were executed. *Cf. id.* It is true that the PICP did not "memorialize the[] [parties'] entire contractual relationship," as Plaintiff also entered into employment agreements with ACRA Ireland, as well as later stock option agreements. *See CSS Antenna*, 764 F. Supp. 2d at 752. But, the PICP was unlike the "supplemental agreement between the parties" in *CSS*

*Antenna*: By its own explicit language, it functioned independently of any concurrent agreements. *See* PICP 1 ("*Not withstanding [sic] any other agreement*, the employee, John R. Kolb, Jr., will be entitled to the following performance incentive compensation during the period of employment.") (emphasis added).

Moreover, this suit arises out of the PICP alone. Consequently, unless the SPA or the Notice supersedes the PICP, the forum selection clauses in those documents do not apply because they only grant Ireland exclusive jurisdiction over disputes "arising out of or in connection with" the SPA and/or the Notice, and the suit does not arise in connection with either of those documents. *See* Notice ¶ 7; SPA 33, § 14.14. It is true that Defendants have demonstrated that Plaintiff stated in the Notice that, "apart from the Option and the 100 Shares of which I am the legal and beneficial owner, I have no other rights or entitlements in respect of Shares," Notice ¶ 6, and that, in the SPA, Plaintiff "irrevocably waive[d] any claims against [ACRA Ireland] its agents, or employees," SPA 19, § 5.6, and warranted that "there is no agreement, arrangement or obligation in force which calls for the present or future allotment, issue or transfer of, or the grant to any person of the right . . . to call for the allotment, issue or transfer of, any share" of ACRA Ireland, *id.* Sched. A, § 3.1a. Defendants also have shown that the later agreements between the parties dealt with the common issues of shares, options to purchase shares, and the sale of shares. Yet, these facts pertain to whether Plaintiff can prevail in his claim for breach of contract. They do not establish that the SPA or the Notice supersedes the PICP such that either document's forum selection clause dictates the forum for this breach of contract action. Thus, at this juncture, it is not clear whether either later agreement superseded the PICP. Therefore, on the record presently before me, I am unable to conclude that the courts of Ireland have exclusive jurisdiction over the pending dispute. Defendants' Motion to Dismiss

for improper venue is DENIED, but without prejudice. Discovery will proceed, and should it reveal that a later agreement with a forum selection clause supersedes the PICP, such that the dispute "aris[es] out of or in connection with" that document, Defendants may renew their motion to dismiss for improper venue. *See CSS Antenna*, 764 F. Supp. 2d at 754; *Alliance Solutions*, 2012 WL 692883, at *11 n.20.

### B. Claims against Curtiss-Wright U.S.A. and ACRA U.S.A.

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). However, if the Court considers matters outside the pleadings, as the Court does here, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, No. 12-1722, --- F.3d ---, 2013 WL 1866940, at *3 (4th Cir. May 6, 2013). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the

burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

   1. *Curtiss-Wright U.S.A.*

Defendant argues that the claims against Curtiss-Wright U.S.A. and ACRA U.S.A. should be dismissed or summary judgment should be entered in favor of these two companies because they have "no ties" to this case. Defs.' Mem. 16. Defendant contends that Curtiss-Wright UK, not Curtiss-Wright U.S.A., "acquired all of the shares of ACRA [Ireland]," such that Curtiss-Wright U.S.A., which is "wholly separate and distinct" from Curtiss-Wright UK, did not "acquire[] any of ACRA [Ireland]'s obligations under the PICP or any other agreement." *See id.*

Plaintiff claims that "ACRA Control, Ltd. was acquired by Curtiss-Wright Controls, Inc. on or about July 28, 2011," Compl. ¶ 2, and that, "[i]n acquiring ACRA Control, Ltd., Curtiss-Wright, Inc. assumed ACRA Control Ltd's obligations to Mr. Kolb under the PICP," *id.* ¶ 18. In opposing Defendants' motion, Plaintiff acknowledges that "[i]t is unclear what the exact relationship [is] between Curtiss-Wright Controls, Inc., Curtiss-Wright UK, and ACRA, US with Defendant ACRA Ltd." Pl.'s Opp'n 2. He states that, "[i]f after discovery, Plaintiff cannot establish that Curtiss-Wright Controls, Inc. and Curtiss-Wright UK were responsible for the debts and liabilities of ACRA Ltd., Plaintiff will stipulate to their dismissal." Pl.'s Opp'n 2–3.

Although it is true that "'by its very nature, the summary judgment process presupposes the existence of an adequate record,'" and generally, "'summary judgment is appropriate only after adequate time for discovery,'" *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Baltimore*, Nos. 11-1111 & 11-1185, 2013 WL 3336884, at *9 (4th Cir. July 3, 2013)), further discovery is unnecessary in this case. Plaintiff's one-count Complaint is for breach of the PICP, a contract between ACRA Ireland and Plaintiff. Compl. ¶¶ 6 & 16. It is the successor of ACRA Ireland that would be bound by the contract and consequently should be named as a defendant in this case. *See PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 174 (4th Cir. 2013) (noting that "a corporation that acquires the assets of another corporation typically does not acquire its liabilities, unless '(1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a "mere continuation" of the predecessor; or (4) the transaction is fraudulent'" or (5) "where 'substantial continuity' exists between a predecessor and successor corporation"). However, Defendants attach the SPA to their motion, and it shows that Curtiss-Wright UK, not Curtiss-Wright U.S.A., acquired ACRA Ireland on July 28, 2011. *See* SPA 1 & § 2.1. Therefore, Curtiss-Wright UK, not Curtiss-Wright U.S.A. is ACRA Ireland's successor. Additionally, Defendants' Local Rule 103.3 Disclosure Statement establishes that Curtiss-Wright UK and Curtiss-Wright U.S.A. are separate entities, both of which are subsidiaries of Curtiss-Wright Corporation. ECF No. 11. Moreover, Plaintiff's contention that he has not had the opportunity to propound any discovery to ascertain the current relationship, if any, between ACRA Ireland and Curtiss-Wright U.S.A., despite his access to these two documents, is unavailing because Plaintiff has not filed "an affidavit or declaration that, for specified reasons,

[he] cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). Therefore, summary judgment is GRANTED in favor of Defendant Curtiss-Wright U.S.A.

The Court notes that, although Plaintiff states that he would stipulate to the dismissal of Curtiss-Wright UK if discovery revealed that Curtiss-Wright UK were not liable under the PICP, Plaintiff has not named Curtiss-Wright UK as a defendant. If Plaintiff wishes to do so, he should file a motion to amend, with specific grounds and supporting authority for any proposed amendments and accompanied by a redlined complaint, within fourteen days. *See* Fed. R. Civ. P. 15(a)(2); 7(b)(1)(B); Loc. R. 105.1.

   *2. ACRA U.S.A.*

Defendant insists that "Plaintiff does not assert any claim against ACRA, US," and, in any event, ACRA U.S.A. "was not involved as a party to any of the documents at issue in this action and it is wholly separate and district from any of the defendants named in this action." Defs.' Mem. 16. In Plaintiff's view, he has stated a claim against ACRA U.S.A., despite the fact that "Plaintiff's contract was between ACRA, Ltd. and Plaintiff," Pl.'s Opp'n 14, because "much of the materials still to be discovered reside with ACRA, US," and ACRA U.S.A. "was a third party beneficiary to the contract between ACRA, Ltd. and Plaintiff," *id.* at 3. Plaintiff also asserts that he "has a claim for both *quantum merit* [sic] and unjust enrichment against ACRA, US" and, if the Court will grant him leave to amend, "Plaintiff will file an amended complaint to include these allegations." *Id.*

As noted, Plaintiff's Complaint has one count, for breach of contract, stemming from an alleged breach of the PICP. *See* Compl. ¶ 16. To prevail on a breach of contract claim, Plaintiff "'must prove that the defendant owed the plaintiff a contractual obligation and that the defendant

breached that obligation.'" *Bezmenova v. Ocwen Financial Corp.*, No. AW-13-0003, 2013 WL 3863948, at *3 (D. Md. July 23, 2013) (quoting *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). ACRA U.S.A. is not a party to the PICP and therefore cannot owe a contractual obligation. *See id.* Rather, as Plaintiff concedes, the parties to the PICP are Plaintiff and ACRA Ireland. *See* PICP 1–2; Pl.'s Opp'n 14. Thus, Plaintiff seeks to sue ACRA U.S.A. as a third-party beneficiary. Pl.'s Opp'n 14. However, third-party beneficiary status allows "a person for whose benefit a contract is made [to] maintain an action upon the contract." *Century Nat'l Bank v. Makkar*, 751 A.2d 1, 6 (Md. Ct. Spec. App. 2000). Third-party beneficiary status is not a mechanism for bringing suit against an entity that benefits from a contract. Additionally, possession of discoverable materials does not make an entity a defendant; Plaintiff can seek discoverable materials from a third party via subpoena. *See* Fed. R. Civ. P. 45. Therefore, Plaintiff has failed to state a claim against ACRA U.S.A., *see* Fed. R. Civ. P. 12(b)(6), and Defendants' motion to dismiss the claim against ACRA U.S.A. is GRANTED.

If Plaintiff believes that he can state a claim in *quantum meruit* or unjust enrichment, he may file a motion to amend, with specific grounds and supporting authority for any proposed amendments and accompanied by a redlined complaint, within fourteen days. *See* Fed. R. Civ. P. 15(a)(2); 7(b)(1)(B); Loc. R. 105.1.

### III. CONCLUSION

In sum, Defendants' Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(3) is DENIED, without prejudice. Defendants' Motion for Summary Judgment as to Defendant Curtiss-Wright Controls, Inc. is GRANTED, and Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the claim against ACRA Control, Inc. is GRANTED. ACRA Ireland is the sole

remaining defendant in this case. ACRA Ireland is not precluded from re-raising its arguments as to venue in a renewed motion at the conclusion of discovery.

Plaintiff may file a motion for leave to file an amended complaint to add Curtiss-Wright UK as a defendant and/or to add ACRA Control, Inc. as a defendant by stating claims in *quantum meruit* or unjust enrichment against ACRA U.S.A., with specific grounds and supporting authority for any proposed amendments and accompanied by a redlined complaint, within fourteen days. See Fed. R. Civ. P. 15(a)(2); 7(b)(1)(B); Loc. R. 105.1.


Dated: August 13, 2013                               /S/
                                            Paul W. Grimm
                                            United States District Judge