**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
|  | * |  |
| **JOHN R. KOLB, JR.** | * |  |
| **Plaintiff,** | * |  |
| **v.** | * | **Case No.: PWG–12–2782** |
| **ACRA CONTROL, LTD., d/b/a** | * |  |
| **ACRA CONTROL, INC.,** *et al.*, | * |  |
| **Defendants.** | * |  |
|  | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

At its core, this case is a straightforward, one-count action for breach of contract in which Plaintiff John R. Kolb, Jr. sues his former employer, ACRA Control Ltd. ("ACRA Ireland"), an Irish company. Yet, corporate acquisitions and later contractual relationships add complexity and, as a result, issues have arisen with regard to whether the contract at issue has expired and if not, what companies may be liable under that contract. At this juncture, I must determine

(1) whether Kolb may amend his Complaint to add ACRA Ireland's subsidiary, ACRA Control, Inc. ("ACRA U.S.A."), a Maryland corporation, and/or Curtiss-Wright Controls (UK) Limited ("Curtiss-Wright UK"), the company that acquired ACRA Ireland, as defendants and to include counts for unjust enrichment and violation of the Maryland Wage and Payment Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 – 3-509 ("MWPCL");

(2) whether Defendants[1] may raise issues of Irish law; and

(3) whether Kolb waived or released his claim for breach of contract by executing a later

contract and related documents with Curtiss-Wright UK, and if so, whether the parties

should brief the matter of sanctions that Defendants raise. [2]

In the interest of justice, I will grant Kolb leave to amend his Complaint to add a count for unjust

enrichment against ACRA U.S.A.[3]  But, I will deny Kolb's motions to amend insofar as he seeks

to add Curtiss-Wright UK as a defendant with regard to his breach of contract claim, because the

claim would be futile, and I will deny Kolb's motion to add a count for violation of the MWPCL

---

[1] Although neither Curtiss-Wright UK nor ACRA U.S.A. was a defendant when Defendant ACRA Ireland filed its pending motions and its oppositions to Plaintiff's pending motions, both joined Defendant ACRA Ireland in all of these filings.  Therefore, for convenience only, I refer to the three companies collectively as Defendants.

[2] Pending are Plaintiff's September 10, 2013 Motion for Leave to File Amended Complaint and Memorandum of Law in Support ("Plaintiff's First Motion to Amend"), ECF No. 32, to which Defendant ACRA Ireland filed an Opposition, ECF No. 33; Plaintiff's February 10, 2014 Motion for Leave to File an Amended Complaint and Memorandum of Law in Support ("Plaintiff's Second Motion to Amend"), ECF No. 52, which the parties fully briefed, ECF Nos. 56 & 59; Defendants' Motion for Summary Judgment, ECF No. 46, which the parties fully briefed, ECF Nos. 46-1, 54 & 58; and Defendants' Motion for Sanctions and Memorandum in Support, ECF No. 42, to which I have not ordered Plaintiff to respond, *see* Loc. R. 105.8(b).  Additionally, after Defendants filed a Notice of Intention to Raise Issues of Foreign Law, ECF No. 44, Plaintiff filed a Motion to Find Defendants Have Waived the Right to Raise an Issue of Foreign Law and Expert Testimony in Summary Judgment Proceedings ("Motion Re Waiver of Irish Law"), ECF No. 45, which also is pending and to which Defendants filed an Opposition, ECF No. 49.  Plaintiff has not filed a Reply with regard to his First Motion to Amend or his Motion Re Waiver of Irish Law, and the time for doing so has passed.  *See* Loc. R. 105.2(a).  For the reasons stated in this Memorandum Opinion, Plaintiff's First Motion to Amend IS GRANTED IN PART and DENIED IN PART; his Second Motion to Amend IS DENIED; Plaintiff's Motion to Find Defendants Have Waived the Right to Raise an Issue of Foreign Law and Expert Testimony in Summary Judgment Proceedings IS DENIED; Defendants' Motion for Summary Judgment IS GRANTED; and Defendants' Motion for Sanctions IS DENIED.  This Memorandum Opinion disposes of ECF Nos. 32, 42, 45, 46 & 52.

[3] As discussed below in Part IV, although Kolb sufficiently stated a claim against ACRA U.S.A. for this amendment not to be "futile" as the term is used in the context of amendment, the claim cannot survive Defendants' Motion for Summary Judgment.  As such, ACRA U.S.A. only is reintroduced as a defendant in this case long enough for summary judgment to be entered in its favor.

against ACRA Ireland, because he has not shown good cause for his delay. Additionally, as I find that Plaintiff had sufficient notice that Defendants likely would raise issues of Irish law, I will deny Plaintiff's motion to find that Defendants waived their ability to raise such issues. Finally, because I find as a matter of law that Plaintiff waived the claims he now brings through a provision in the agreement he entered into with Curtiss-Wright UK, such that Defendants ACRA Ireland and ACRA U.S.A. are entitled to judgment as a matter of law, I will grant Defendants' motion for summary judgment. I will deny Defendants' motion for sanctions.

## I.    BACKGROUND

ACRA U.S.A. and Defendant ACRA Ireland are companies that "suppl[y] airborne data acquisition networks and recording systems and real-time data processing ground stations to the aerospace industry."   Compl. ¶ 2, ECF No. 1; *see* Fergal Bonner Aff. ¶ 2,[4] Defs.' Mot. to Dismiss Mem. Ex. 1, ECF No. 7-3.   ACRA Ireland hired Plaintiff to be ACRA U.S.A's president in 1999, at which time Plaintiff and ACRA Ireland entered into an Employment Agreement and a Performance Incentive Compensation Plan ("PICP"), the contract that Plaintiff contends ACRA Ireland has breached.   Compl. ¶ 6.   Pursuant to the PICP, Plaintiff could purchase shares in ACRA Ireland when it notified him that "the average turnover (ATO) of the company due to US sales, as defined, exceeds one million ($1,000,000) dollars."   PICP 1, Compl. Ex. A, ECF No. 1-1 (emphasis removed).   This provision lasted "for a minimum of five (5) years during the period of employment unless mutually agreed in writing." *Id.*

Plaintiff also had options to purchase shares pursuant to other contracts.   Specifically, in 2003 and again in 2010, Plaintiff and ACRA Ireland executed Option Agreements for Plaintiff to purchase shares of ACRA Ireland.   Plaintiff exercised his rights under the 2003 Option

---

[4] The Bonner Affidavit and all exhibits attached to it appear as ECF No. 46-4.

Agreement, purchasing 100 shares of ACRA Ireland.  Defs.' Summ. J. Mem. 12; Pl.'s Summ. J. Opp'n 5–6.   Additionally, Plaintiff signed a Notice of Option Exercise, in which Plaintiff exercised his right to purchase shares of ACRA Ireland immediately before Curtiss-Wright UK acquired ACRA Ireland in 2011. Bonner Aff. ¶ 11 & Ex. 17.  Thus, Plaintiff, as a shareholder of ACRA Ireland, was party to the 2011 Share Purchase Agreement ("SPA") between Curtiss-Wright UK and ACRA Ireland's shareholders.  Aug. 13, 2013 Mem. Op. 4, ECF No. 19; *see* SPA, Defs.' Mot. to Dismiss Mem. Ex. 14, ECF No. 7-16.

Yet, ACRA Ireland never informed Plaintiff that he had the option to purchase shares pursuant to the PICP, and therefore Plaintiff never exercised that option.  According to Plaintiff, he should have had that option for fiscal years 2004 – 2010, because the ATO from U.S. sales exceeded one million dollars for each of those years and Plaintiff worked for ACRA Ireland during that entire period. Compl. ¶¶ 8, 11 & 13.  He claims that ACRA Ireland breached the PICP because he was not provided notice so that he could exercise the option to purchase shares for any of those years.  *Id.* ¶ 16.

## II.      MOTIONS TO AMEND

Originally, Plaintiff also named Curtiss-Wright U.S.A. and ACRA U.S.A. as defendants. *See* Compl. 1.  I granted summary judgment in favor of Defendant Curtiss-Wright U.S.A., reasoning that "[i]t is the successor of ACRA Ireland that would be bound by the contract and consequently should be named as a defendant in this case," and the SPA shows that Curtiss-Wright UK, not Curtiss-Wright U.S.A., acquired ACRA Ireland on July 28, 2011." Aug. 13, 2013 Mem. Op. 12.  I directed Plaintiff that if he wanted to name Curtiss-Wright UK as a defendant, "he should file a motion to amend, with specific grounds and supporting authority for any proposed amendments and accompanied by a redlined complaint" by August 27, 2013.  *Id.* at

13.   Likewise, I granted Defendants' motion to dismiss the claim against ACRA U.S.A., reasoning that "ACRA U.S.A. is not a party to the PICP and therefore cannot owe a contractual obligation."  *Id.* at 14.  I stated that "[i]f Plaintiff believes that he can state a claim in *quantum meruit* or [for] unjust enrichment, he may file a motion to amend, with specific grounds and supporting authority for any proposed amendments and accompanied by a redlined complaint" by August 27, 2013.  *Id.* at 14.

Plaintiff filed a timely Motion for Leave to File Amended Complaint and Memorandum of Law in Support ("Plaintiff's First Motion to Amend").[5]  He proposed adding Curtiss-Wright UK as a defendant with regard to the breach of contract claim and adding a claim for unjust enrichment against ACRA U.S.A.  Pl.'s 1st Mot. to Am. 1–2.  More than five months later, on February 10, 2014, Plaintiff filed another Motion for Leave to File an Amended Complaint and Memorandum of Law in Support ("Plaintiff's Second Motion to Amend"), ECF No. 52.  In Plaintiff's Second Motion to Amend, Plaintiff seeks to add a count for violation of the MWPCL against ACRA Ireland, in addition to the previously-requested amendments.  Pl.'s 2d Mot. to Am. 1–2.

## A.  Standard of Review

Whether to grant a motion for leave to amend is within this Court's discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Rule 15(a)(2) typically provides the standard for whether to grant a motion for leave to amend that a plaintiff files more than twenty-one days after the defendant files a responsive pleading or motion to dismiss.  *See id.*; Fed. R. Civ. P. 15(a)(2).

---

[5] Plaintiff filed his original Amended Complaint and Motion to Amend, ECF Nos. 25 & 26, incorrectly on August 27, 2013.  ECF No. 27.  He filed the corrected First Motion to Amend, ECF No. 32, which now is pending, on September 10, 2013.

Plaintiff's First Motion to Amend is timely and governed by Rule 15(a)(2). *See Foman*, 371 U.S. at 182; Fed. R. Civ. P. 15(a)(2).

Pursuant to Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."   The Court only should deny leave to amend if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Foman*, 371 U.S. at 182 (stating that the court also may deny leave if the plaintiff has amended more than once already without curing the deficiencies in the complaint); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).   Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and the plaintiff moves to amend, the Court should grant the motion so that the plaintiff has the "opportunity to test his claim on the merits."   *Foman*, 371 U.S. at 182.

Determining whether amendment would be futile does not involve "'an evaluation of the underlying merits of the case.'" *MTB Servs.*, 2013 WL 1819944, at *3 (quoting *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, No. CCB–11–0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)).   Rather, "the merits of the litigation" are only relevant to the Court's ruling on a motion for leave to amend if "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," *Katyle v. Penn Nat. Gaming Inc.*, 637 F .3d 462, 471 (4th Cir. 2011); *see MTB Servs.*, 2013 WL 1819944, at *3. A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.  8(a)(2), or does not state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–

79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 663.

When a plaintiff moves to amend after the deadline established in the scheduling order

for doing so, Rule 16(b)(4) becomes the starting point in the Court's analysis. *CBX Techs., Inc. v.*

*GCC Techs., LLC*, No. JKB-10-2112, 2012 WL 3038639, at *3 (D. Md. July 24, 2012). Plaintiff

filed his Second Motion to Amend on February 10, 2014. *See* Pl.'s 2d Mot. to Am. The

Scheduling Order that I issued on August 13, 2013 allowed the parties to move for joinder of

additional parties and amendment of pleadings until September 27, 2013. ECF No. 21. Contrary

to Plaintiff's assertions,[6] none of my later orders superseded the deadline for amendment.

Therefore, Plaintiff "'first must satisfy the good cause standard of Rule 16(b),'" and if he

succeeds, he "'then must pass the tests for amendment under [Rule] 15(a).'" *CBX Techs., Inc.*,

2012 WL 3038639, at *3 (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d

618, 631 (D. Md. 2003)); *see Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir.

2008).

"'"[G]ood cause" means that scheduling deadlines cannot be met despite a party's

diligent efforts.' . . . Carelessness is not compatible with a finding of diligence and offers no

reason for a grant of relief." *CBX Techs., Inc.*, 2012 WL 3038639, at *4 (quoting *Potomac Elec.*

*Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) (citation omitted)).

The Court focuses "less . . . on the substance of the proposed amendment and more . . . [on] the

---

[6] Plaintiff argues at length that "Federal Rule of Civil Procedure 16(b) is not implicated because
the initial scheduling order was effectively replaced by the Court's implementation of phased
discovery." Pl.'s Reply 4; *see id.* at 2–3; Pl.'s 2d Mot. to Am. 2–3.

timeliness of the motion to amend 'and the reasons for its tardy submission.'" *Id.* (quoting *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373–74 (D. Md. 2002)).  This is because "[a] court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Id.* (quoting *Potomac Elec. Power Co.*, 190 F.R.D. at 376 (citation and quotation marks omitted)).  Specifically, the Court considers whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party.  *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010).  When "at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline," a plaintiff has "good cause" for moving to amend at a later date.  *Id.* at 768; *see In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429, 1994 WL 118475, at *11 (4th Cir. Apr. 7, 1994) (concluding that district court abused its discretion when it denied motion to amend to add a new claim after deadline set in scheduling order had passed).

## B.  First Motion to Amend

### 1.  *Breach of contract claim against Curtiss-Wright UK*

Plaintiff insists that Curtiss-Wright UK is a proper defendant for his breach of contract claim because it is "responsible for ACRA Ireland's liabilities," whether Curtiss-Wright UK acquired ACRA Ireland through a "stock purchase" or an "asset purchase."  Pl.'s 1st Mot. to Am. 3–4.  Defendants counter that "allowing Plaintiff to amend his Complaint to add a claim against Curtiss-Wright UK would be futile" because the breach of contract claim against Curtiss-Wright UK "would not survive a motion to dismiss."   Defs.' Opp'n to Pl.'s 1st Mot. to Am. 3. They argue:

8

> Curtiss-Wright UK's status as the sole shareholder of ACRA Ireland (which today
> continues to have a separate, ongoing legal existence as a subsidiary of Curtiss-
> Wright UK), in and of itself, as a matter of law, does not cause it to be liable for
> the breach of contract entered into by ACRA Ireland.

*Id.*

To state a claim against Curtiss-Wright UK for breach of contract, Plaintiff first must allege that Curtiss-Wright UK owed it "'a contractual obligation.'" *Bezmenova v. Ocwen Financial Corp.*, No. AW-13-0003, 2013 WL 3863948, at *3 (D. Md. July 23, 2013) (quoting *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)).  As I noted in my August 13, 2013 Memorandum Opinion, a corporation does not acquire another corporation's liabilities simply by acquiring its assets.  Aug. 13, 2013 Mem. Op. 12 (citing *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 174 (4th Cir. 2013)).  A successor corporation only acquires its predecessor's liabilities if "'(1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a "mere continuation" of the predecessor; or (4) the transaction is fraudulent'" or (5) "where 'substantial continuity' exists between a predecessor and successor corporation."  *See PCS Nitrogen Inc.*, 714 F.3d at 174.  In his proposed verified Amended Complaint, ECF No. 52-4, Plaintiff alleges that "ACRA Ireland was acquired by Curtiss-Wright U.K. on or about July 28, 2011 through a share purchase agreement," and that Curtiss-Wright UK "is the sole shareholder of ACRA Ireland."  Am. Compl. ¶¶ 2 & 4.  Additionally, Plaintiff claims that "[i]n acquiring ACRA Ireland through a share purchase agreement, Curtiss-Wright U.K. assumed ACRA Ireland's obligations to Mr. Kolb under the PICP."  *Id.* ¶ 20.

Paragraph 20 appears to be a conclusory legal assertion[7] that is not sufficient to state a claim for breach of contract under *Iqbal*.  556 U.S. at 678–79; *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating that the Court is not required to accept as true "a legal conclusion couched as a factual allegation"); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (stating that the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences").  Given the previously cited case law, it certainly is not a "reasonable inference" to conclude that Curtiss-Wright UK has a contractual obligation to Plaintiff that makes it "liable for the misconduct alleged" simply by virtue of that fact that it acquired ACRA Ireland through the SPA.  *See Iqbal*, 556 U.S. at 663; *Bezmonova*, 2013 WL 3863948, at *3.  Indeed, Plaintiff argues to the contrary in his First Motion to Amend, citing SPA cl. 2.1's provision that Curtiss-Wright UK "agrees to purchase all of such Shares *free from all Encumbrances*," and asserting that ACRA Ireland's liabilities were not transferred under the SPA.  *See* Pl.'s 1st Mot. to Am. 3 (emphasis added).  Plaintiff contends that, instead of liability transferring, ACRA Ireland's "shareholders, namely Curtiss-Wright UK," retained liability.  *See id.* Yet, Plaintiff does not provide any legal authority or contractual provision for the proposition that any of the shareholders, let alone Curtiss-Wright UK, ever had any liability for ACRA Ireland.

---

[7] I acknowledge that the language of Paragraph 20 is ambiguous, as a reader alternatively could find that Plaintiff intended it to be a factual allegation, in which Plaintiff is claiming that the SPA provided that Curtiss-Wright would assume ACRA Ireland's obligations.  However, having reviewed the SPA, I am aware that the SPA contains no such provision.  *see* SPA, Pl.'s 1st Mot. to Am. Ex. A, ECF No. 32-4.  As I am certain that Plaintiff's counsel would not violate his obligations under Rule 11 deliberately, I am construing this statement as a legal conclusion.  *See* Fed. R. Civ. P. 11 (providing that, at the risk of sanctions, an attorney presenting a pleading to the Court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have [or likely will have] evidentiary support").

Plaintiff also argues, alternatively, that Curtiss-Wright UK acquired ACRA Ireland's liability when it acquired its predecessor's shares, "under the 'mere continuation' exception." *See* Pl.'s 1st Mot. to Am. 3.  However, as Defendants note, "[t]he traditional rule with regard to the 'mere continuation' exception is that a corporation is not to be considered the continuation of a predecessor unless, after the transfer of assets, only one corporation remains, and there is an identity of stock, stockholders, and directors between the two corporations."  *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992).  Here, prior to and after the stock purchase, ACRA Ireland and Curtiss-Wright UK remained separate entities.  *See* Pl.'s 1st Mot. to Am. 3; Defs.' Opp'n to Pl.'s 1st Mot. to Am. 7.  Therefore, Curtiss-Wright UK did not acquire ACRA Ireland's liability under the "mere continuation" exception.  *See Carolina Transformer Co.*, 978 F.2d at 838.  Consequently, Plaintiff's proposed amendment to state a claim for breach of contract against Curtiss-Wright UK is futile.  *See Katyle*, 637 F .3d at 471; *see MTB Servs.*, 2013 WL 1819944, at *3.  Plaintiff's First Motion to Amend is DENIED insofar as he seeks to add Curtiss-Wright UK as a defendant.

### 2.  *Unjust enrichment claim against ACRA U.S.A.*

Defendants did not oppose Plaintiff's First Motion to Amend insofar as it pertained to the unjust enrichment claim against ACRA U.S.A.  Defs.' Opp'n to Pl.'s 1st Mot. to Am. 3.  However, in opposing Plaintiff's Second Motion to Amend, Defendants argue that "[a]ny amendment to add claims for unjust enrichment or for a violation of the MWPCL would be futile because Plaintiff has released and/or waived any such causes of action . . . ."  Defs.' Opp'n to Pl.'s 2d Mot. to Am. 6.  Essentially, Defendants contend that the affirmative defenses of release and waiver would bar Plaintiff from recovering on any claims that he might have had prior to executing the SPA.  *See id.*

It is true that a plaintiff fails to state a claim where the allegations on the face of the complaint show that an affirmative defense would bar any recovery. *Jones v. Bock*, 549 U.S. 199, 214–15 (2007) (citing Fed. R. Civ. P. 8(c)); *see Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (noting that dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense").  But, the affirmative defenses of release and waiver are not apparent on the face of Plaintiff's Complaint, as originally filed or as amended.  Indeed, Defendants do not argue as much.  Rather, they assert that the futility of these causes of action is "set forth in detail" in their *summary judgment* argument.  Defs.' Opp'n to Pl.'s 2d Mot. to Am. 7.  They concede that "[t]ypically, an amendment is deemed futile if the amendment could not survive a *motion to dismiss*," and that "Plaintiff's requested amendment to add a cause of action for an alleged violation of the MWPCL may not be 'futile' under a *motion to dismiss* standard."  Defs.' Opp'n to Pl.'s 2d Mot. to Am. 6–7 (emphases added).  Thus, as the summary judgment standard is inapplicable to the futility analysis for purposes of a motion to amend, Defendants have not set forth any argument to support denying Plaintiff leave to amend to state a claim for unjust enrichment.  *See Foman*, 371 U.S. at 182; *MTB Servs., Inc.*, 2013 WL 1819944, at *3.  Plaintiff's First Motion to Amend is GRANTED insofar as he seeks to add a claim for unjust enrichment against ACRA U.S.A.  Nonetheless, Plaintiff's victory in this regard is fleeting, because his unjust enrichment claim will not survive summary judgment, as discussed below in Part IV.

### C.  Second Motion to Amend

Plaintiff now seeks to add a claim for violation of the MWPCL against ACRA Ireland, based on facts that he allegedly learned when deposing ACRA Ireland's corporate designee.  Pl.'s 2d Mot. to Am. 4–5.  According to Plaintiff, he learned "that despite the removal of the

stock option incentive from Plaintiff's 1999 employment contract, ACRA Ireland regarded the PICP as part of Plaintiff's overall compensation scheme and not some ancillary agreement," such that Plaintiff could state a claim under the MWPCL.  Pl.'s Reply to 2d Mot. to Am. 5; *see also* Pl.'s 2d Mot. to Am. 7 ("[T]he corporate designee made clear that . . . ACRA Ireland regarded the PICP as previously agreed upon compensation in exchange for Plaintiff's employment services.").[8]  He justifies the late filing of his proposed amendment by asserting that the deposition "was delayed because of scheduling conflicts with the appointed corporate designee, who traveled from Ireland to the United States exclusively for the deposition."  Pl.'s 2d Mot. to Am. at 5.  In his view, adding a MWPCL claim "will not result in prejudice to Defendants as this matter remains in a preliminary phase of discovery" and "Plaintiff is amenable to any reasonable extension of time Defendants may need to address the potential MWPCL count in their dispositive motion." *Id.*

Defendants counter that Plaintiff has not shown good cause to amend at this late date because he has been aware of the facts that allegedly form the basis of his MWPCL violation claim "since the inception of this case."[9]  Defs.' Opp'n to Pl.'s 2d Mot. to Am. 4.  In particular, they assert that Plaintiff "must have . . . known" that "'Defendants contemplated the PICP as part of Plaintiff's overall compensation agreement' . . . as early as 1999 when the PICP was entered

---

[8] While Plaintiff also claimed in his Second Motion to Amend that he learned additional information through the deposition, Pl.'s 2d Mot. to Am. 8, in his Reply, he only identifies the fact that "ACRA Ireland regarded the PICP as part of Plaintiff's overall compensation scheme" as information that he "learned through discovery," Pl.'s Reply to 2d Mot. to Am. 5.  Perhaps this is because the other information he identified as newly-learned already appeared as allegations in his Complaint.  *See* Compl. ¶¶ 9, 10, 13 & 16.

[9] Alternatively, Defendants insist that this amendment, like the addition of an unjust enrichment claim, is futile because Plaintiff has waived or released his claim. *See* Defs.' Opp'n to Pl.'s 2d Mot. to Am. 6–7.  As discussed above, Defendants' argument is unavailing.

into" because "the PICP provided that Plaintiff was to be compensated, in part, through the potential option to purchase shares in ACRA Ireland in connection with his original employment with ACRA Ireland." *Id.* (quoting Pl.'s 2d Mot. to Am. 8).

It is hard to fathom how a compensation plan executed in conjunction with an employment agreement, such as the PICP, could be regarded as anything other than a part of the overall plan for the employer to compensate the employee. At a minimum, these facts, which Plaintiff certainly knew when he filed his original Complaint, would provide a sufficient basis for claiming that the employer considered any compensation to be provided under the compensation plan to be a part of the employee's overall compensation. Thus, assuming without deciding that Plaintiff has stated a claim under the MWPCL, he could have done so just as readily when he filed his original Complaint or his timely First Motion to Amend as when he filed his Second Motion to Amend, more than four months after the deadline established by the Scheduling Order. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 & 678–79 (2009). Plaintiff has not shown that he made diligent efforts to meet the scheduling deadline. *See CBX Techs., Inc.*, 2012 WL 3038639, at *4. Consequently, although the delay may not prejudice ACRA Ireland, Plaintiff has not demonstrated good cause for his delay. *See id; Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010). Plaintiff's Second Motion to Amend is DENIED.

### III.   PLAINTIFF'S MOTION TO FIND DEFENDANTS HAVE WAIVED ISSUE OF FOREIGN LAW/EXPERT

In their Notice of Intention to Raise Issues of Foreign Law, Defendants announced that they intend to raise issues of Irish law regarding (1) contract "construction, interpretation and application," (2) the affirmative "defenses of waiver, release, laches, and estoppel," and (3) "the question of whether Curtiss-Wright Controls (UK) Ltd. assumed any liability of ACRA Control,

Ltd. and/or ACRA Control, Inc. in connection with the Share Purchase Agreement." Defs.' Notice 1–2. In Plaintiff's view, Defendants should not be allowed to raise issues of foreign law because they had known for sixteen months that they would be raising these issues, but they did not disclose their intention until the eve of filing their summary judgment motion, despite "ample opportunity," in contravention of Fed. R. Civ. P. 44.1. Pl.'s Mot. Re Waiver of Irish Law 3.

In Opposition, Defendants insist that "explicit and repeated assertions and arguments by Defendants in filings with the Court since the inception of this case that the affirmative defenses arising from the 2011 Notice of Option Exercise, the SPA and other related documents are governed by Irish law" put Plaintiff on notice that Defendants intended to raise issues of Irish law. Defs.' Opp'n to Pl.'s Mot. Re Waiver of Irish Law 1–2. Indeed, Plaintiff agrees that Irish law governs the SPA and the Notice of Option Exercise. Pl.'s Summ. J. Opp'n 11–12 & 18.

Federal Rule of Civil Procedure 44.1 provides that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." In this case, the focus of the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment, ECF No. 7-1, was on Defendants' assertion that venue is improper because "even assuming *arguendo* that Plaintiff can successfully assert his claim, which Defendants deny, he must do so in Ireland pursuant to Irish law." Defs.' Mot. to Dismiss Mem. 2. This certainly put Plaintiff and the Court on notice that Defendants believed that Irish law applied to the issues in this case. No more formal notice was necessary. *See In re Griffin Trading Co.*, 683 F.3d 819, 822–23 (7th Cir. 2012) (concluding that the complaint "sufficed to give notice about the applicability of foreign law" because it "explicitly cite[d] . . . trading activity in London as the precipitating event, and point[ed] to the transfer to . . . a Netherlands entity that used a German bank[] as the cause for liability," which "was

enough to put all parties on notice that the transactions might be governed by foreign law"; reasoning that "[a]lthough it is true that Rule 44.1 requires any party who intends to present evidence of foreign law to 'give notice by a pleading or other writing,' the language of the rule itself reveals that no particular formality is required. Any 'other writing' will do, as long as it suffices to give proper notice of an intent to rely on foreign law"); *In re Eternity Shipping, Ltd., Eurocarriers, S.A. for Exoneration from or Limitation of Liability*, 444 F. Supp. 2d 347, 382 n.95 (D. Md. 2006) (noting that "a Rule 44.1 Notice was not necessary because all parties have been aware since the beginning of the case that the Court must decide the effect that Ms. Gonzales's case in the Philippines has on the instant lawsuit"). Therefore, Defendants have not waived their right to raise issues of Irish law.

Additionally, Plaintiff contends that Defendants "waived their right to provide expert testimony in the Summary Judgment proceedings" because they "failed to timely submit an expert report and accompanying disclosures." Pl.'s Mot. Re Waiver of Irish Law 5–6. Differentiating expert testimony used to determine foreign law from "expert testimony submitted under Federal Rule of Evidence 702," Defendants argue that "the stringent requirements of F.R.C.P. 702, 703 or 705 are inapplicable to experts on foreign law proffered under F.R.C.P. 44.1" Defs.' Opp'n to Pl.'s Mot. Re Waiver of Irish Law 6.

It is true that Fed. R. Civ. P. 44.1, not Fed. R. Evid. 702, governs the use of testimony regarding foreign law. *See* Fed. R. Civ. P. 44.1. Rule 44.1 provides that, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Therefore, Defendants have not waived their right to offer testimony regarding foreign law. *See id.*

Plaintiff also insists that Defendants should not be able to raise issues of "laches and estoppel which are clearly outside of the scope of this Court's discovery and scheduling order." Pl.'s Mot. Re Waiver of Irish Law 4.  Because I do not reach the issue of estoppel, this argument is moot. Plaintiff's Motion Re Waiver of Irish Law IS DENIED.

## IV.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).   If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Celotex v. Catrett*, 477 U.S. 317 (1986).   The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).   Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

Defendants move for summary judgment "primarily on the grounds that Kolb expressly released and/or waived the breach of contract claims asserted in the Complaint" when he signed three documents on July 28, 2011: the SPA, the Notice of Option Exercise, and a "waiver/release letter . . . in connection with the SPA" ("Letter"). Defs.' Summ. J. Mem. 1–2. The SPA, which Plaintiff signed as a "Seller," provides: "At Completion each Seller shall irrevocably waive any

claims against any Group Company its agent, or employees which he/she may have outstanding

at Completion."  SPA cl. 5.6.  The SPA defines "Group" as "the Company and each Subsidiary

Undertaking for the time being."  SPA cl. 1.1.  It defines "Group Company" as "any one of" the

Company, i.e., ACRA Ireland, and its Subsidiary Undertakings, which include ACRA U.S.A.

*Id.* & SPA Sched. 2 Part 2.   The Notice of Option Exercise provides: "I confirm and

acknowledge that apart from the Option and the 100 Shares of which I am the legal and

beneficial owner, I have no other rights or entitlements in respect of Shares."  Notice of Option

Exercise ¶ 6, Bonner Aff. Ex. 17.  The Letter provides:

> I have no claim or right of action of any kind outstanding against the Group or
> any of its officers or employees arising from my ownership of shares in the Group
> or otherwise. To the extent that any such claim exists or may exist, I irrevocably
> waive such claim and release the Group, its officers and employees from any
> liability in respect thereof[.]

Ltr. ¶ 1, Bonner Aff. Ex. 20.  The parties agree that these three documents all relate to "Curtiss-

Wright UK's proposed purchase of all shares of ACRA Ireland."  *See* Defs.' Summ. J. Mem. 9;

*see also id.* at 1; Pl.'s Opp'n 12 n.12 & 18.  Collectively, I will refer to them as the "Purchase

Documents."

As noted, the parties agree that Irish law governs the Purchase Documents.  Pl.'s Summ.

J. Opp'n 11–12 & 18; Defs.' Summ. J. Mem. 10, 17–18; *see* SPA 33, § 14.14 (choice of law

provision); Notice of Option Exercise ¶ 7 (choice of law provision).  Defendants have provided

an expert report on Irish law as it pertains to this dispute, *see* Expert Report of Denis McDonald

("McDonald Rpt."), Defs.' Summ. J. Mem. Ex. E, ECF No. 46-6; Supplemental Report of Denis

McDonald ("McDonald Supp. Rpt."), Defs.' Summ. J. Reply Ex. A, ECF Nos. 58-1 & 58-2, and

Plaintiff has done the same, *see* Expert Report of Rory Kirrane ("Kirrane Rpt."), Pl.'s Summ. J.

Opp'n Ex. 13, ECF No. 54-13.  I have considered both experts' reports and cases they cited, as

well as conducted my own independent research, in my analysis of the relevant law.  *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.").

### A. Whether the Purchase Documents Contain a Waiver of Plaintiff's Rights under PICP

Plaintiff argues that none of the provisions in the Purchase Documents is a waiver of his rights under the PICP when construed under Irish law.  The parties agree that "the SPA must be interpreted objectively."  McDonald Supp. Rpt. ¶ 13; *see* Kirrane Rpt. ¶ 27.  Further, they agree that the basic tenets of Irish contract law are, as stated in *Investor Compensation Scheme v. West Bromwich Building Society*, [1998] 1 WLR 896, 912, an English case, and adopted by the Supreme Court of Ireland in *Analog Devices B.V. v. Zurich Insurance Co.*, [2005] 1 IR 274, 280–81:

> (1)    Interpretation is the ascertainment of the meaning which the document would convey to a reasonable person having all the background knowledge which would reasonably have been available to the parties in the situation in which they were at the time of the contract.

> (2)    . . . Subject to the requirement that [the background] should have been reasonably available to the parties and to the exception to be mentioned next, it includes absolutely anything which would have affected the way in which the language of the document would have been understood by a reasonable man.

> (3)    The law excludes from the admissible background the previous negotiations of the parties and their declarations of subjective intent. . . .

> (4)    The meaning which a document . . . would convey to a reasonable man is not the same thing as the meaning of its words.  The meaning of words is a matter of dictionaries and grammar; the meaning of the document is what the parties using those words against the relevant background would reasonably have been understood to mean. . . .

> (5)    The "rule" that words should be given their 'natural and ordinary meaning' reflects the common sense proposition that we do not easily accept that people have made linguistic mistakes, particularly in formal documents. . . .

McDonald Rpt. ¶ 14; Kirrane Rpt. ¶¶ 21–22, 26.

Mr. Kirrane states that "in Irish law the ultimate issue of the construction of the meaning of a written contract is a question of law," but "[a]scertaining the meaning of particular words is a question of fact."  Kirrane Rpt. ¶ 25.   Notably, "'[w]here the parties have used unambiguous language, the court must apply it.'"  *Sidney Frank Importing Co., Inc. v. Beam Inc.*, ---- F. Supp. 2d ----, 2014 WL 643696, at *9  (S.D.N.Y. Feb. 14, 2014) (interpreting contract under Irish law and quoting *Rainy Sky S.A. v. Kookmin Bank*, [2011] 1 WLR 2900, 2908, 2011 WL 5077782, 23); *see* Kirrane Rpt. ¶ 26 ("If . . . a term of a contract is unambiguous and can only have one meaning, the court cannot interpret that unambiguous meaning so as to seek to interpret the intentions of the parties." (quoting *Lac Minerals v. Chevron*, (6 Aug. 1993, unreported), High Court)).  "'Particularly in the field of commerce,'" the court must adhere to this rule because "'it is essential for [the parties] to be confident that they can rely on the court to enforce their contract according to its terms.'"  *Sidney Frank Importing Co.*, 2014 WL 643696, at *9 (quoting *Marlan Homes Ltd. v. Walsh*, [2012] IESC 23, at ¶ 52(Ir.) (quoting *Charter Reinsurance v. Fagan*, [1997] A.C. 313 (H.L.) 388 (Lord Mustill))).

> "Loyalty to the text of a commercial contract, instrument, or document read in its contextual setting is the paramount principle of interpretation. But in the process of interpreting the meaning of the language of a commercial document the court ought generally to favour a commercially sensible construction. The reason for this approach is that a commercial construction is likely to give effect to the intention of the parties. Words ought therefore to be interpreted in the way in which a reasonable commercial person would construe them. And the reasonable commercial person can safely be assumed to be unimpressed with technical interpretations and undue emphasis on niceties of language."

*Rainy Sky S.A.*, 2011 WL 5077782, at 25 (quoting *Society of Lloyd's v. Robinson*, [1999] 1 All ER (Comm) 545, 551).

*1.   Scope of Claims Waived under Clause 5.6*

Clause 5.6 of the SPA provides: "At Completion each seller shall irrevocably waive any claims against any Group Company, its agent or employees, which he/she may have outstanding at Completion."  Plaintiff contends that, "[a]ccording to Mr. Kirrane, when the complete first sentence [of SPA Clause 5.6] is analyzed, as would be required under Irish law, the intention that no future claims were waived or released becomes apparent."  Pl.'s Summ. J. Opp'n 13.  Mr. Kirrane emphasizes that the sentence cannot be read without its final three words, "outstanding at Completion," as he suggests Mr. McDonald attempts to do.  Kirrane Rpt. ¶ 32.  Mr. Kirrane opines that "it can be contended with particular force that the proper construction of Clause 5.6 of the contract is directed to claims existing at the time of Completion and not resolved, rather than future claims."  *Id.*  In Plaintiff's view, this means that each seller waived any claims that he or she already made "at Completion," that is, when the sale and purchase of ACRA Ireland's shares had been completed, SPA cl. 1.1, but did not waive any "future claims" that he or she has not made yet.  Pl.'s Summ. J. Opp'n 13. Mr. Kirrane reaches the same result by considering Clause 5.6 "in context with the related sections of the SPA," namely, Items 14 and 16 of Schedule 3.  *Id.* at 13–14; Kirrane Rpt. ¶ 32.

Mr. Kirrane is correct that the clause must be read in its entirety and in the context of the agreement as a whole.  *See* Paul Anthony McDermott, *Contract Law* § 9.28, at 361–62 (Tottel Publ'g), McDonald Supp. Rpt. Exs., ECF No. 58-2.  Of import, elsewhere in the document, the SPA unambiguously states that the Shares to be sold and purchased through the SPA "represent the entire issued share capital of the Company," i.e., ACRA Ireland, SPA Bkgrd. (C), and the sale and purchase will be of all "Shares free from all Encumbrances," *id.* cl. 2.1, with "Encumbrance" defined to include "any adverse claim or right," *id.* cl. 1.1.  Thus, a reasonable

person would read this unambiguous language to conclude that Curtiss-Wright UK would purchase the Shares unencumbered by any existing claims.  This is consistent with Mr. Kirrane's opinion.

The issue, then, is when a party "may have" a "claim."  Despite the experts' divergent opinions, "claim" is an unambiguous term that I must give its "natural and ordinary meaning." *See Investor Compensation Scheme*, 1 WLR at 912 (citation and quotation marks omitted); *Analog Devices*, 1 IR at 280–81; *Rainy Sky*, 1 WLR at 2908.  Mr. Kirrane employs a nonsensical meaning under which a party does not "have" a "claim" until he or she voices that claim.  *See* Kirrane Rpt. ¶ 32.  This interpretation flies not only in the face of reason but also in the face of a reasonable understanding of the objective intent of the SPA to convey all Shares without threat of future challenges to that conveyance that could have been brought before the SPA was finalized.

In contrast, Mr. McDonald provides an explanation of the term "claim" that is consistent with its ordinary meaning and the SPA as a whole: "[A] claim is capable of extending not only to a demand for something that is currently due, but also a right or ground which currently exists which would serve as a basis for a demand to be made in the future."   McDonald Supp. Rpt. ¶ 14.   Additionally, he states that "[b]oth species of claim . . . can be '*outstanding*' at any particular point in time.  Thus, one can have demands outstanding at the date of completion of the SPA.  One can equally have grounds for making of future demands outstanding at the date of completion of the SPA."  *Id.*  A reasonable person in the parties' position and with their business backgrounds would share this understanding of the unambiguous language of Clause 5.6.  As Mr. McDonald notes, the claims that Plaintiff raises in this lawsuit "relate[] to facts or circumstances which undisputedly existed at the time of execution of the SPA,"   McDonald

Supp. Rpt. ¶ 15, even if Plaintiff had not voiced these claims at that time.  Accordingly, I find that the plain language of SPA Clause 5.6 provides for a waiver of the claims Plaintiff now brings in this Court.

    *2.  Effects of Clause 14.6 on Clause 5.6*

Clause 14.6 of the SPA, governing "Remedies and Waivers," provides that "[n]o delay or omission by any party to this Agreement in exercising any right, power or remedy provided by law or under this Agreement shall . . . operate as a waiver of [that power or remedy]," SPA cl. 14.6(a), and that "[t]he rights, powers and remedies provided in this Agreement are cumulative and not exclusive of any rights, powers and remedies provided by law,"  SPA cl. 14.6(c).  In arguing that "Clause 14.6 of the SPA overrides Clause 5.6," Plaintiff relies on Mr. Kirrane's conclusion that, because "'Clause 14.6 is specifically and carefully directed to preserving all the parties' rights provided by law,'" any argument for waiver under Clause 5.6 "'would likely falter.'"  Pl.'s Summ. J. Opp'n 16–17 (quoting Kirrane Rpt. ¶ 42).  Mr. Kirrane opines that "[t]here is in fact a reasonable probability that the Irish Court would construe the terms of Clause 14.6 as overriding the terms of Clause 5.6" because "[t]he terms of Clause 14.6 are particularly express and the provision that rights are cumulative rather than exclusive would appear to negate the operation of Clause 5.6."  Kirrane Rpt. ¶ 43.

In Mr. McDonald's opinion, an Irish court would not "read Clause 14.6 in the manner suggested by Mr. Kirrane" because such a reading "would render meaningless the substance of Clause 5.6."  McDonald Supp. Rpt. ¶ 16.  Indeed, a contract should not be read to include meaningless or superfluous language. *See Compagnie Tunisienne de Navigation SA v Compagnie d'Armement Maritime SA*, [1971] A.C. 572, 583 (1970-07-14) ("Normally where a clause was drafted by the parties or their agents we can assume that they must have intended it to mean

something.").   A reasonable person with the parties' background knowledge would read Clauses 5.6 and 14.6(a) together to provide that, although a party's failure to exercise its rights would not constitute a waiver under Clause 14.6(a) in and of itself, the express waiver contained in Clause 5.6 is a waiver of the rights specified in Clause 5.6.   Put another way, Clause 14.6(a)'s provision that a failure to act is not waiver does not mean that rights cannot be waived in another way, such as through an express waiver like Clause 5.6.   Likewise, a reasonable interpretation of Clauses 5.6 and 14.6(c) is that, while the parties retain various rights outside of the agreement, they expressly waive those rights mentioned in Clause 5.6.   Consequently, I find that Clause 14.6 does not override Clause 5.6, and therefore, SPA Clause 5.6 functions as a waiver of Plaintiff's pending claims.

### B.  Unilateral Waiver

Plaintiff insists that, even if the Purchase Documents contained a waiver provision, he could not have waived his rights under the PICP, a contract between him and ACRA Ireland, through the Purchase Documents because the SPA is a contract he entered into with Curtiss-Wright UK, to which ACRA Ireland was not a party.  Pl.'s Summ. J. Opp'n 14–15.  It is true that the PICP provides that it "will be in effect and maintained for a minimum of five (5) years during the period of employment unless *mutually agreed* in writing," PICP 1 (original emphasis removed; emphasis added).   Yet, under both Maryland and Irish law, when a contractual provision is, "on the face of the contract," clearly "for the exclusive benefit of one party," it is "waivable unilaterally by him." *McKillop v. McMullan* [1979] N1 85, McDonald Rpt. App'x 7, ECF No. 46-6; *see* McDonald Rpt. ¶ 57 ("It is well established [in Irish law] that a party to an agreement may unilaterally waive a term of an agreement which is for his exclusive benefit. There would therefore have been nothing to prevent the Plaintiff from waiving his entitlement to

the share options under the PICP.  In my opinion, to a reasonable degree of certainty, an Irish court would not see anything in the PICP which requires that any such waiver would have to specifically refer to the PICP." (citing *McKillop*)); *Williston on Contracts* § 39:24 ("[D]espite the notion . . . that a waiver must be the result of a mutual agreement of one sort or another, it is well settled that a contracting party may unilaterally waive a provision of the contract" that is solely for the waiving party's benefit.) (footnotes omitted).[10]  In such circumstances, even when the contract calls for mutual agreement to alter the contract, "the other's assent may be implied" when the unilateral waiver would not "deprive the nonwaiving party of a benefit." *Williston on Contracts* § 39:24.  Plaintiff's expert does not dispute the possibility of unilateral waiver. Instead, he argues that any waiver was a part of an agreement to which ACRA Ireland and ACRA U.S.A. were not parties, such that neither could not "take advantage of" the waiver. Kirrane Rpt. ¶¶ 33–39.  Therefore, the experts do not dispute that Plaintiff could have waived the benefits he would receive under the PICP through a document to which ACRA Ireland was not a party.  I find that, as a matter of law, Plaintiff unilaterally waived his rights under the PICP through SPA Clause 5.6.

### C.  Whether Defendants May Enforce the Waiver

In Plaintiff's view, even if he waived his rights under the PICP through one or all of the Purchase Documents, neither ACRA Ireland nor ACRA U.S.A. can enforce any of the Purchase Documents for two reasons.  First, he argues that neither corporation was a party to the SPA.

---

[10] I need not decide which law governs the PICP, *see* Kirrane Rpt. ¶ 45(i) (stating that "the PICP . . . is not governed by Irish law"); McDonald Supp. Rpt. ¶ 33 ("It will obviously be a matter for the Court to form its own view as to the governing law of the PICP"), as the Maryland and Irish laws are the same on this point.

Pl.'s Summ. J. Opp'n 14–15.  Second, he contends that he never gave informed consent to the waiver provision.  *Id.* at 19–20.

### 1.  *Privity of Contract*

Plaintiff insists that neither ACRA Ireland nor ACRA U.S.A. can enforce a waiver provision that appears in a document to which neither was a party.  Pl.'s Summ. J. Opp'n 14–15.  He notes that his expert opines that "the 'longstanding doctrine of privity of contract[]' precludes ACRA Ireland from enforcing any portion of the SPA" because "'"no stranger to the consideration can take advantage of a contract, although made for his benefit."'"  *Id.* at 14 (quoting Kirrane Rpt. ¶¶ 33–34 (quoting *Murphy v. Bower*, (1868) IR 2 CL 506)); *see id.* at 15– 16 (quoting Kirrane Rpt. ¶ 36).  Mr. Kirrane relies on three cases, one more than fifty years old and the others a century older: the English[11] case of *Tweedle v. Atkinson*, (1861) 1 B & S 393, 121 ER 762, and the Irish cases of *Murphy v. Bower*, (1868) IR 2 CL 506, and *Mackey v. Jones*, (1959) 93 ILTR 177.  Kirrane Rpt. Exs.  In *Murphy*, the assignees of railway contractors brought suit for breach of contract against the contractors' supervisor, an employee of the railway, for failure to issue the certificates that the contractors needed to receive pay for the work they performed.  IR 2 CL at 506–09.  Noting that "the duty of the engineer [supervisor] to give certificates arises, if at all, out of a contract" to which neither the contractors nor their assignees were parties, the Irish court concluded that the plaintiffs could not "maintain an action for its

---

[11] Mr. McDonald and Mr. Kirrane agree that relevant English law provides persuasive authority in the Irish Courts.  Kirrane Rpt. ¶ 24 ("The common law of England and Wales is very regularly cited in the Irish Courts and decisions of the Courts of England and Wales are considered to be of persuasive authority where relevant and are closely regarded on issues relating to, for example, the law of contract, tort and associated doctrines."); McDonald Rpt. ¶ 14 ("[T]he Irish courts, in matters relating to the common law, frequently follow or adopt the approach taken by the courts of England & Wales.  Insofar as the interpretation of written agreements is concerned, the Supreme Court of Ireland, in *Analog Devices B.V. v. Zurich Insurance Company*[1] expressly adopted the approach taken by Lord Hoffman in the [English case] *Investor Compensation Scheme . . . .*") (bold typeface replaced with italics).

breach" because "no one can maintain an action who is not a party to the contract." *Id.* at 512; *see id.* at 514 (stating that plaintiffs "must proceed against the company who contracted with [the railway contractors]").

*Tweedle* and *Mackey* both involved sons' attempts to enforce contracts to which one of their parents was a party.  In *Tweedle*, the court held that a son could not "maintain an action upon" a contract between his father and his father-in-law because "no stranger to the consideration can take advantage of a contract, although made for his benefit."  121 ER at 763–64 (Wightman, J.).  Judge Crompton explained: "[T]he consideration must move from the party entitled to sue upon the contract.  It would be a monstrous proposition to say that a person was a party to the contract for the purpose of suing upon it for his own advantage, and not a party to it for the purpose of being sued."  *Id.* at 764.  In *Mackey*, the plaintiff sued the executrix of his granduncle's estate, seeking specific performance of an oral contract that he contended his granduncle entered into with his mother when the plaintiff was fourteen, under which the granduncle promised to leave the plaintiff his farm, in exchange for the plaintiff's labor on the farm.  The court found that there was no contract at all, stating that the conversation "amounted to nothing more than a statement of intention or wish by the deceased."  93 ILTR at 177.  In dicta, the court observed that, even if there were a contract, the plaintiff could not have enforced it because "[h]e was not a party to the proposal."  *Id.*

Defendants' expert agrees that "the doctrine of privity of contract would ordinarily prevent a non-party to the contract from taking legal proceedings to affirmatively *enforce* that contract against one of the parties to it."  McDonald Supp. Rpt. ¶ 5 (emphasis in original).  He states that, "[a]s a matter of Irish law, any action to *enforce* the contract would have to be taken by a party to it."  *Id.* (emphasis in original).  On that basis, Defendants concede that ACRA

Ireland and ACRA U.S.A. "may be precluded from *bringing* legal proceedings to enforce the waiver/release."  Defs.' Summ. J. Reply 5 (emphasis added).

However, the procedural posture of the case before me is different from those that Plaintiff's expert cites, where the plaintiffs brought actions to enforce contracts to which they were not parties.  Here, Defendants identify a waiver provision in a contract to which they are not parties as a *defense* to the claims that Plaintiff brings.  Emphasizing this distinction, Defendants maintain that ACRA Ireland and ACRA U.S.A. may rely on the waiver provisions of the Purchase Documents to *defend against* Plaintiff's claim.  Defs.' Summ. J. Reply 5–6, 8.  Defendants' expert opines that, "[b]ecause the Plaintiff has given up his claim [through the Purchase Documents], then the claim is extinct as a matter of fact," such that there is no "bar to ACRA Ireland and ACRA USA relying upon that fact in defence of a claim which has been brought against them by the Plaintiff."  McDonald Supp. Rpt. ¶ 5.  He "conclude[s] to a reasonable degree of certainty that an Irish court would reject the Plaintiff's assertion that privity of contract precludes ACRA Ireland and ACRA USA from raising waiver and release as defences to his claims," and also that "an Irish court would not permit the Plaintiff to prosecute claims against the Defendants under the PICP."  *Id.*

As Mr. McDonald sees it, Mr. Kirrane's conclusion that "Plaintiff is still free to pursue a claim which he had previously agreed to waive and release . . . is a startling and very disturbing proposition."  *Id.* ¶ 6.  He explains:

> It would wholly undermine the efficacy of agreements under which, for example, a patient in proceedings against a hospital agrees to a settlement of a medical malpractice suit on the basis that the patient would release all claims not only as against the hospital but as against the surgeon, the anaesthetist and the other professionals involved notwithstanding that those persons are not parties to the proceedings taken by the patient against the hospital.  In short, general releases and waivers, like the one given here by the Plaintiff are of common practice in

Ireland and the proposition asserted here by Mr. Kirrane would entirely undermine their application.

*Id*. Mr. McDonald further opines, *id*. ¶ 7:

> In my experience as a trial lawyer, courts in Ireland are astute to ensure that technical rules of law are not invoked in order to defeat the ends of justice or in order to pursue claims which are not properly maintainable. . . . If, in truth, a plaintiff has given up a claim under the terms of a previous agreement, the court is likely to take the view that it would be an abuse of process for the plaintiff to pursue the very claim which he has waived or released.

In support, Mr. McDonald cites one century-old case from the Court of Appeal in England, *Hirachand Punamchand v. Temple*, [1911] 2 KB 330. Mr. McDonald acknowledges that "[t]he facts of that case were quite different to the facts here," and that "[t]he case was not concerned with privity of contract as such," but he relies on it nonetheless because, "in [his] view, the underlying rationale of the decision would apply here." McDonald Supp. Rpt. ¶ 8. I agree.

In *Hirachand Punamchand*, the plaintiffs lent money to the defendant in exchange for a promissory note and a bond. When the defendant failed to repay the loans, the plaintiffs sought payment from the defendant's father. Following correspondence between the plaintiffs and the father, in which the plaintiffs asked what amount the father would pay to "'settle this debt due from his son,'" the father sent two bank drafts to settle the debts, and the plaintiffs cashed the checks. Thereafter, the plaintiffs sought additional payment from the father and, when he refused, sued the defendant for payment on the bond. The trial court entered judgment for the plaintiffs, holding that the father's payment was not a defense for the defendant.

On appeal, Lord Justice Moulton, speaking for the majority, observed that "there must be taken to have been an agreement between the plaintiffs and [the father], by which the plaintiffs agreed to accept the money sent by him in satisfaction of the note." *Id.* at 338. He concluded

that, "by that transaction between the plaintiffs and [the father,] the debt on the promissory note became extinct." *Id.* at 339.  The court held, *id.*:

> The effect of such an agreement between a creditor and a third party with regard to the debt is to render it impossible for the creditor afterwards to sue the debtor for it.  They way in which this is worked out in law may be that it would under an abuse of the process of the Court to allow the creditor under such circumstances to sue, or it may be, and I prefer that view, that there is an extinction of the debt.

On those grounds, the court concluded that the defendant had a valid defense and allowed the defendant's appeal. *Id.* at 339–42.

Thus, although the case concerned a debtor–creditor relationship, it, like the case before me, involved two contractual relationships.  In the first relationship in each case, the plaintiff(s) entered into an agreement with the defendant(s).  In the second contractual relationship, the plaintiff(s) entered into an agreement with a third party, in which the plaintiff(s) may have relinquished their rights under the first agreement.  In *Hirachand Punamchand*, as in the case before me, the plaintiffs sought to exercise their rights under the first agreement, and the defendant raised the plaintiffs' alleged waiver of those rights as a defense.  The English Court of Appeal concluded that the plaintiffs' rights under the first agreement were extinguished by the second agreement, and on that basis ruled that the plaintiffs' waiver was available to the defendant as a defense. *Id.* at 339–42.  This sound reasoning applies in the case before me also.

Here, in 1999, Plaintiff entered into an agreement, the PICP, in which he was entitled to purchase shares in ACRA Ireland "when the average turnover (ATO) of the company due to US sales, as defined, exceeds one million ($1,000,000) dollars."  PICP 1.  Then, on July 28, 2011, Plaintiff, as a shareholder of ACRA Ireland, entered into to the 2011 Share Purchase Agreement ("SPA") between Curtiss-Wright UK and ACRA Ireland's shareholders.  As noted, the SPA provides that each Seller, including Plaintiff, "irrevocably waive[s] any claims against [*inter*

*alios*, ACRA Ireland and ACRA U.S.A] which he/she may have outstanding at Completion."
SPA cl. 5.6. He also signed two related documents that day, the Notice of Option Exercise and
the Letter. The Notice of Option Exercise states that Plaintiff has "no other rights or entitlements
in respect of Shares," other than "the Option and the 100 Shares of which [he is] the legal and
beneficial owner." Notice of Option Exercise ¶ 6. The Letter states that Plaintiff has "no claim
or right of action of any kind outstanding against [*inter alios*, ACRA Ireland and ACRA
U.S.A]," and that, "[t]o the extent that any such claim exists or may exist, [he] irrevocably
waive[s] such claim and release[s] [*inter alios*, ACRA Ireland and ACRA U.S.A] from any
liability in respect thereof." Ltr. ¶ 1. Notwithstanding the fact that the SPA is between Plaintiff
and a third party, the waiver provisions in the Purchase Documents are available to ACRA
Ireland and ACRA U.S.A. as a defense.[12] *See Hirachand Punamchand v. Temple*, [1911] 2 KB
330, 339.

### 2. Informed Consent

In Plaintiff's view, the SPA waiver provision is "unenforceable under Irish law since Mr.
Kolb did not receive independent legal advice," as "any advice Plaintiff may have received from
the Sellers' counsel likely would not suffice because of the parties['] inherent conflict of
interest." Pl.'s Summ. J. Opp'n 19–20. Plaintiff insists that, as a result, "Mr. Kolb did not
provide his informed consent as required under Irish law." *Id.* at 19. Defendants contend that
the independent legal advice requirement is of no moment because "Plaintiff *had* independent
legal advice"; the firm of William Fry represented him in connection with the SPA. Defs.' Reply
14; *see* McDonald Supp. Rpt. ¶ 30.

---

[12] Plaintiff also argues that the July 28, 2011 Letter is unenforceable. Pl.'s Summ. J. Opp'n 18.
Because I find that Plaintiff waived his claims through Clause 5.6 of the SPA, and that the
waiver is available to ACRA Ireland and ACRA U.S.A. as a defense, I need not determine the
enforceability of the Letter.

The law firm of William Fry represented Plaintiff with regard to entering into the SPA. *See* Kolb Dep. 167:20 – 168:22.  Plaintiff summarizes the legal representation he received as follows:

> Negotiations for the sale of ACRA Ireland concluded on July 28, 2011, with the execution of the SPA. No final draft of the SPA, which was one hundred and three (103) pages long, was provided to Plaintiff until the morning of the day that all documents relating to the transaction were scheduled to be signed. Ex. 7, Banim E-mail, July 28, 2011. In this connection, in an e-mail from Sellers' attorney, Ivor Banim of the firm of William Fry, forwarding the final draft of the SPA, Mr. Banim stated that aside from the attached documents "[t]here are some other ancillary documents also regarding waiver of claims, a stock transfer form and share cert indemnities which you are to sign." *Id*. "These are standard as you are aware so I will not trouble you with them unless you need to see them." *Id*. Later that day, Plaintiff called Ivor Banim, to express his concern that he might have claims, about which he was unaware, and was, therefore, hesitant to sign any waiver. Ex. 8, Kolb Dep. 176:2-11, November 25, 2013. Plaintiff further stated that he might need to go home and review all of his previous records and agreements with ACRA Ireland and ACRA U.S.A., before he could sign such a waiver. Ex. 6, Kolb Declaration. ¶ 7. Ivor Banim responded to Mr. Kolb that Mr. Kolb was only waiving claims about which he was presently aware and would not be waiving any claims about which he was not aware. Ex. 9, Pl's Answers to Def.'s Interrog. No. 1. Mr. Banim further stated that Mr. Kolb should discuss any further concerns that he had with Mr. Bonner. *Id*. Immediately following his conversation with Mr. Banim, Plaintiff attempted unsuccessfully to contact Mr. Bonner. Ex. 8, Kolb Dep. 214:11-215:14. Plaintiff requested that Mr. Bonner contact him; however, Mr. Bonner did not respond that day. *Id*.

Pl.'s Summ. J. Opp'n 6–7.

While the adequacy of this representation may be questionable, Plaintiff is mistaken in his belief that he needed independent legal advice for an Irish court to uphold the waiver provision.  Plaintiff relies on Mr. Kirrane's opinion that "an Irish Court would typically expect to see informed consent on the part of Mr Kolb upon having received appropriate independent legal advice" if "Mr Kolb waived rights under the PICP" through "a legally binding agreement between ACRA Control Limited and Mr Kolb."  Kirrane Rpt. ¶ 53.  Mr. Kirrane, in turn, bases his assertion on "a requirement in Irish law in settlement agreements involving employment

rights for the party said to be waiving such rights to have received appropriate independent legal advice." Kirrane Rpt. ¶ 51. He cites various cases for the proposition that "settlement agreements are only upheld in circumstances where the employee received independent legal advice." *Id.* ¶ 52. But here, the SPA is not a settlement agreement. Further, as Defendants observe, the SPA does not involve employment rights; it involves ownership rights. *See* Defs.' Reply 14; McDonald Supp. Rpt. ¶ 29. Therefore, Plaintiff need not have had independent legal advice for the waiver to be enforceable.

In sum, I find that the SPA contained an enforceable waiver provision, through which Plaintiff unilaterally waived his rights under the PICP. Moreover, I find that the waiver provision is available to ACRA Ireland and ACRA U.S.A. as a defense. Further, I find that, in that waiver provision, Plaintiff waived the claims he seeks to assert in this action. On that basis, I will grant Defendants' Motion for Summary Judgment and enter judgment in favor of ACRA Ireland and ACRA U.S.A.[13]

## V.     DEFENDANTS' MOTION FOR SANCTIONS

Defendants filed a Motion for Sanctions and Memorandum in Support, ECF No. 42, against Plaintiff and Plaintiff's counsel, alleging that Plaintiff and his counsel "fil[ed] and maintain[ed] the frivolous claims Kolb asserts against Defendants in this matter, which claims Kolb has already expressly waived and/or released," and requesting "a sanction in the amount of all costs incurred by Defendants in pursuing this Motion for Sanctions, as well as all other costs incurred in defending this action" since the Motion for Sanctions was served. Defs.' Sanctions Mem. 1. I have not directed Plaintiff to respond to this Motion for Sanctions. *See* Loc. R. 105.8.

---

[13] Because I am entering judgment in Defendants' favor on alternative grounds, I need not reach the estoppel argument.

Defendants seek sanctions pursuant to Fed. R. Civ. P. 11(b), which provides:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, . . . (2) the claims, defenses, and other legal contentions are warranted by existing law, . . . (3) the factual contentions have [or will have] evidentiary support, . . . and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Thus, when an attorney "'maintain[s] a legal position to a court'" in the Fourth Circuit and, under "'a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified,'"" the court may impose Rule 11(b) sanctions. *ATS Int'l Servs., Inc. v. Kousa Int'l, LLC*, No. RDB-12-2525, 2014 WL 1407290, at *8 (D. Md. Apr. 10, 2014) (quoting *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998))).

> The way in which a claim is pled does not bear on Rule 11 sanctions; only the absence of any basis, legal or factual, is sanctionable. [*Hunter*, 281 F.3d] at 153 (citation omitted). Nor does Rule 11 require that a claim be proven before a complaint is filed. *Id*. Instead, Rule 11 attempts only to discourage wasteful filing of "groundless lawsuits." *Id*. Where a party violates Rule 11(b), Rule 11(c) allows the court to impose sanctions which may include awarding "the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. Pro. 11(c)(1)-(2). Consequently, the "imposition of sanctions is discretionary with the Court, not mandatory." *Thomas v. Treasury Mgmt. Assoc.*, 158 F.R.D. 364, 369 (D. Md. 1994) (citing *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994). Moreover, it is well-established in this Court that sanctions should be imposed sparingly. *Id*. at 366.

*ATS Int'l Servs.*, 2014 WL 1407290, at *8.

Here, although Plaintiff's claims cannot survive Defendants' Motion for Summary Judgment, it cannot "'be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'"" *See id.* Kolb and his counsel, neither of whom appear to be trained in Irish law, reasonably could have believed that Kolb had not waived his right to bring this suit. Indeed, the legal representation Kolb received in conjunction with

entering into the SPA, as described in pages 6–7 of Plaintiff's Summary Judgment Opposition, could lead Plaintiff to believe that none of the Purchase Documents would operate as a waiver of his claims under the PICP.   Moreover, while defending the summary judgment motion, Plaintiff relied on an expert who provided a credible, albeit erroneous, explanation of why the language of the Purchase Documents did not operate as a waiver.   Therefore, this case is not one of the rare instances in which Plaintiff's or counsel's actions warrant Rule 11 sanctions.   *See ATS Int'l Servs.*, 2014 WL 1407290, at *8.   Defendants' Motion for Sanctions IS DENIED.

## VI.   CONCLUSION

In sum, Plaintiff's First Motion to Amend IS GRANTED IN PART and DENIED IN PART; his Second Motion to Amend IS DENIED; Plaintiff's Motion to Find Defendants Have Waived the Right to Raise an Issue of Foreign Law and Expert Testimony in Summary Judgment Proceedings IS DENIED; Defendants' Motion for Summary Judgment IS GRANTED; and Defendants' Motion for Sanctions IS DENIED.   ACRA U.S.A. is added as a defendant, and judgment is entered in favor of Defendants ACRA Ireland and ACRA U.S.A.   The Clerk is directed to close this case.   A separate Order will issue.


Dated: <u>May 16, 2014</u>                         <u>      /S/            </u>
                                                  Paul W. Grimm
                                                  United States District Judge